## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 23 2020, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sean P. Hilgendorf
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeremiah Lamar Ware,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

October 23, 2020

Court of Appeals Case No.
20A-CR-1133

Appeal from the St. Joseph
Superior Court

The Honorable Jane Woodward
Miller, Judge

Trial Court Cause No.
71D01-1901-F1-3

**Weissmann, Judge.**

The trial court convicted Jeremiah Ware of Level 1 Felony Attempted Murder after a bench trial.[1] Ware now appeals, arguing that his conviction was based on insufficient evidence to prove he fired a weapon and that if he did, that he fired with the intent to kill. Finding no error, we affirm.

## Facts

On January 14, 2019, Chaelice Abdulla and Tuesdae Stenson were hanging out at Stenson's home on Cushing Street in South Bend. At some point, Stenson became involved in a fight on social media with Symone Berry. Berry then showed up outside Stenson's place driving a red Dodge Avenger. Kanija Taylor was in the front passenger seat. Tyreik Williams was sitting behind Berry, and Jeremiah Ware was sitting behind Taylor. Both Taylor and Berry got out of the car. Berry and Stenson continued to argue. Abdulla watched from the window in Stenson's living room. Surveillance footage taken from the house across the street shows a figure in the window, presumably Abdulla, messing with the blinds. State's Ex. 1.

Shots were fired upon Stenson's home. The surveillance footage shows a man sliding out of the rear driver's side window where Williams sat and firing at Stenson's residence. *Id.* Taylor testified that she also heard shots fired from the rear inside the car, where Ware sat. Tr. Vol. II p. 111-12. Another witness testified to seeing gunfire emerge from the passenger side of the car. *Id.* at 193.

---

[1] Ind. Code §§ 35-42-1-1; 35-41-5-1; 35-41-2-4.

A nearby sensor recorded fourteen shots, twelve of which were later connected to Williams' handgun. Two shots were fired from an unknown gun. One of the bullets traced to the gun fired by Williams hit Abdulla, puncturing her lung and hitting her spine.

[4] After the shooting stopped, Berry drove away. Taylor turned to the backseat and saw two guns — one handgun in Williams' lap and one long gun resting in the middle of the backseat. She testified that she called the two men "dumb" and Ware told her not to say anything about the incident. *Id.* at 127-28.

[5] Police arrived shortly after the shooting ended. Upon entering Stenson's home, they found Abdulla unresponsive on the living room floor. Abdulla survived, but she can no longer walk and uses a wheelchair. Police recovered four projectiles from the living room and twelve bullet casings in the street directly in front of Stenson's home. One bullet was also recovered from Abdulla's body.

[6] The next day, police stopped Berry's red Dodge Avenger. She, Ware, and Williams were in the car. Berry was driving, Ware was in the front passenger seat, and Williams was in the back. The police took Berry, Ware, and Williams into custody. Upon searching the car, police recovered a Smith & Wesson handgun in the backseat containing Williams' fingerprints. There was no physical evidence that Ware had ever handled that gun. Police also found two 9mm shell casings in the back seat. According to the Firearm and Toolmark Examiner at the South Bend Police Department Crime Lab, these casings were

not fired from the Smith & Wesson.  The Smith & Wesson did fire the bullet that struck Abdulla and the casings found in the street.  *Id.* at 219-22.

[7]     On January 18, 2019, the State charged Ware with Level 1 felony attempted murder and Level 3 felony aggravated battery.  His two-day bench trial started on January 21, 2020.  In its memorandum and order, filed January 31, 2020, the trial court found that Taylor's testimony was "credible and corroborated."  Mem. and Order p. 5.  It found that Ware was in the car, fourteen shots were fired, that Ware fired two shots into Stenson's window, and that he intended to kill.  *Id.* at 3-6.  As a result, the trial court found Ware guilty on both counts, but only entered judgment for attempted murder due to double jeopardy concerns.  The trial court sentenced Ware to thirty years in prison and he now appeals.

## Discussion and Decision

[8]     Ware argues that the State's evidence at trial was insufficient to support his conviction; first, because the evidence does not prove that he fired at Stenson's home, and second, because there was no proof that he had intent to kill.  When reviewing the sufficiency of the evidence to support a conviction, we "must consider only the probative evidence and reasonable inferences supporting the verdict."  *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007).  We will not reweigh evidence or reassess witness credibility.  *Id.*  Instead, we affirm unless no reasonable factfinder could determine that each element of the crime was proved beyond a reasonable doubt.  *Id.*  Even if reasonable people might

disagree, we cannot set aside the trial court's findings. *Durham v. State*, 250 Ind. 555, 560, 238 N.E.2d 9, 12 (Ind. 1968).

[9] To find Ware guilty of attempted murder, the State was required to prove beyond a reasonable doubt that he acted knowingly or intentionally to kill another human being and that his actions constituted a substantial step toward the commission of that crime. I.C. §§ 35-42-1; 35-41-5-1.

# I. Evidence Ware Fired a Gun

[10] Ware argues that the trial court "heap[ed] guesses upon speculation" in reaching the conclusion that Ware fired at Stenson's home on January 14, 2019. Appellant's Brief p. 17. The court's finding was based on the following evidence: Taylor believed Ware fired a gun, because she heard gunshots near her ear; she thus believed those shots were fired from inside Berry's car, unlike the shots Williams fired over the car; Taylor saw two guns in the backseat (a handgun in Williams's lap and a long gun resting on the seat between the two men); Ware told Taylor not to mention the incident to anyone; the forensic report on the audio recording of the shooting indicated that two shots sounded different than the other twelve recorded, which could indicate that a second weapon was fired; and the two 9mm casings found in the backseat of Berry's car were not fired from the gun traced to Williams that fired the other twelve shots. Mem. and Order p. 4-5. The trial court found Taylor's testimony credible and the forensic evidence convincing. *Id* at 5. A reasonable factfinder could infer from this evidence that Ware fired a gun.

# II. Evidence of Intent to Kill

[11] Additionally, there is sufficient evidence to find that Ware had the requisite intent to commit attempted murder. "The intent to kill may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or serious injury. [Our Supreme Court] has found sufficient evidence for conviction when the evidence indicates that a weapon was fired in the direction of the victim." *Bethel v. State*, 730 N.E.2d 1242, 1245 (Ind. 2000) (internal citations omitted). The surveillance video shows someone at Stenson's window, repeatedly shifting the blinds. The physical evidence indicates the gunmen fired fourteen shots, at least thirteen of which struck near that window. If twelve of these shots were from the Smith & Wesson bearing Williams' fingerprints, then a reasonable person could conclude that two of those shots were from the second gun fired by Ware. Altogether, this evidence is sufficient to prove that Ware shot at Abdullah as she hovered inside the home behind the window, and therefore Ware acted with the requisite intent to commit attempted murder.

[12] The evidence is sufficient to support the trial court's findings. Finding no error, we affirm.

[13] The judgment of the trial court is affirmed.

Bailey, J., and Vaidik, J., concur.